IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DONN BERGQUIST,

       Plaintiff,
 v.

AUTO-OWNERS INSURANCE COMPANY,

       Defendant and     OPINION and ORDER
       Third-Party Plaintiff,
                 19-cv-104-jdp
 v.

SUPERIOR WATER LIGHT
AND POWER COMPANY,

       Third-Party Defendant.

---

  Plaintiff Donn Bergquist brings this lawsuit against his insurer, defendant Auto-Owners Insurance Company, seeking coverage for water damage to his property. Dkt. 1. Auto-Owners denied coverage, and Bergquist has moved for partial summary judgment, asking the court to declare that his policy covers the damage under an endorsement for "Equipment Breakdown." Dkt. 12. He also asks the court to compel an appraisal of his property to determine the scope of his loss. Dkt. 13. The court concludes that Bergquist is not entitled to coverage under the Equipment Breakdown endorsement, so the court will deny Bergquist's motion for partial summary judgment on the merits, and it will deny his request for an appraisal as moot.

  In its opposition to Bergquist's motion, Auto-Owners asks for summary judgment in its favor on the grounds that the policy provides no coverage for Bergquist's loss. Bergquist relied exclusively on the Equipment Breakdown endorsement, so it appears at this point that

Auto-Owners may be right. The court will order Bergquist to identify any other provision of his policy that provides coverage for the damage to his property.

UNDISPUTED FACTS

The following facts are undisputed.[1]

Auto-Owners insured a commercial property owned by Bergquist that sustained extensive water damage in 2018. Bergquist filed a claim with Auto-Owners, who hired an engineer to investigate the claim. The engineer determined that the damage was caused by a degraded underground pipe that ruptured. Dkt. 19-2. Auto-Owners denied Bergquist's claim in a letter, citing an exclusion for "damage caused by water under the ground surface that flows through floors, doors or windows." Dkt. 30-1. Auto-Owners said that its letter was not "an exhaustive statement" of its position regarding coverage under the policy. *Id.*

Bergquist contends that his loss is covered under the endorsement for "Equipment Breakdown." Dkt. 22-3 at 50–56.[2] The endorsement says that Auto-Owners will pay for Equipment Breakdown subject to the policy limits. Section 1.a. Equipment Breakdown is defined in section 3.b. as follows:

> "Equipment Breakdown" means:
>
> (1) Physical loss or damage both originating within:
>
>     (a) Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or

---

[1] The parties either expressly adopted or failed to properly respond to each other's proposed findings of fact, so the court will treat all facts proposed by the parties as undisputed, as provided in the preliminary pretrial conference order. Dkt. 9, at 4.

[2] Both sides filed copies of the policy; neither side pointed to any substantive difference between the two documents. Citations are to the cleaner copy filed by Auto-Owners at Dkt. 22-3.

> internal pressure other than static pressure of contents, excluding:
>
> 1) waste disposal piping;
>
> 2) any piping forming part of a fire protective system;
>
> 3) furnaces; and
>
> 4) any water piping other than:
>
> > a) boiler feed water piping between the feed pump and the boiler;
> >
> > b) boiler condensate return piping; or
> >
> > c) water piping forming part of a refrigerating or air conditioning system.
>
> (b) All mechanical, electrical, electronic or fiber optic equipment; and
>
> (2) Caused by, resulting from, or consisting of:
>
> (a) Mechanical breakdown;
>
> (b) Electrical or electronic breakdown; or
>
> (c) Rupture, bursting, bulging, implosion, or steam explosion.

Section 3.b. But the definition continues with several express exclusions. Those exclusions are stated, in relevant part, as follows:

> However, "Equipment Breakdown" does not mean:
>
> Physical loss or damage caused by or resulting from any of the following; however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage:
>
> (a) Wear and tear;
>
> (b) Rust or other corrosion, decay, deterioration, hidden or latent defect, "fungi", wet rot, dry rot, virus, bacteria or any other quality in property that causes it to damage or destroy itself;
>
> . . .

> (h) Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:
>
> 1) Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement; or
>
> 2) Flood, unless an "Equipment Breakdown" ensues.

*Id.*

## ANALYSIS

Bergquist contends that the damage to his property is covered under the policy's Equipment Breakdown endorsement. The parties accept the engineer's report that the damage to Bergquist's property was caused by an underground water pipe connected to a fire hydrant that had degraded and ruptured. Dkt. 19-2, at 1.

The application of an insurance contract to undisputed facts presents a question of law for the court. *Beerbohm v. State Farm Mut. Auto. Ins. Co.*, 2000 WI App 105, ¶ 8, 612 N.W.2d 338, 235 Wis. 2d 182. In determining the meaning of an insurance contract, the court's goal is to determine the intent of the parties and give effect to that intent. *Folkman v. Quamme*, 2003 WI 116, ¶ 16, 665 N.W.2d 857, 264 Wis. 2d 617. The court must determine how "a reasonable person in the position of the insured" would have understood the contract. *Id.*, ¶ 20. The court must "construe ambiguities in favor of the insureds and narrowly construe exclusions against insurers." *Id.*, ¶ 16.

The parties focus their arguments on the exclusions in section 3.b. of the endorsement, particularly the wear and tear exclusion. But the analysis must begin by determining whether

the endorsement grants coverage in the first place. *Connors v. Zurich Am. Ins. Co.*, 2015 WI App 89, ¶ 20, 872 N.W.2d 109, 365 Wis. 2d 528. If so, the court must then determine whether the policy contains an exclusion that would preclude coverage of the claim. *Id.* If an exclusion applies, then the court must determine whether any exceptions to that exclusion would require coverage of the claim. *Id.*

The endorsement defines "equipment breakdown" as physical loss or damage that meets two requirements. Dkt. 22-3, at 55. First, the loss or damage must originate within specified types of equipment. Second, the loss or damage must result from certain specified causes. The second requirement is met because the damage to Bergquist's property was caused by the rupture of a pipe. This falls within subsection 3.b.(2)(c), which applies to rupture or bursting.

But the first requirement is not met, because the damage to Bergquist's property did not originate within the specified types of equipment. The court will assume that the ruptured pipe constitutes "pressure piping" as specified in subsection 3.b.(1)(a). But that subsection continues with exclusions, and the exclusions include "any water piping." The exclusion for "any water piping" includes three exceptions: boiler feed piping, boiler condensate piping, and piping that is part of a refrigeration or air conditioning system. None of those exceptions apply. So subsection 3.b.(1)(a)(4) excludes coverage for damage that originates in water piping, which is the source of the damage to Bergquist's property.

Bergquist says that even if the initial cause of the damage to his property was excluded from coverage, the damage is covered because damage that results from an excluded cause might nevertheless be covered. Bergquist relies on the sentence that introduces the list of exclusions in the second half of section 3.b. That sentence says:

However, "Equipment Breakdown" does not mean:

Physical loss or damage caused by or resulting from any of the following; *however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage*[.]

Section 3.b. (emphasis added).

The provision Bergquist invokes is an example of an "ensuing loss" provision. *See Arnold v. Cincinnati Ins. Co.*, 2004 WI App 195, 688 N.W.2d 708, 276 Wis. 2d 762. An ensuing loss provision covers a loss that would otherwise be excluded—if the loss has "a cause in addition to the excluded cause" that would be covered and not otherwise excluded, *Id.*, ¶¶ 25–42. Auto-Owners provides a good example of how an ensuing loss provision would work:

> An example of an ensuing loss would be property damage caused by a fire that was in turn caused by an earthquake, if the policy excluded coverage for earthquakes but contained an ensuing loss provision. Suppose that an earthquake caused a gas main to break, which in turn caused a fire that damaged the property. In that situation, damage to the property as a result of the earthquake would not be covered, but damage to the property caused by the fire would be covered (even though the fire was caused by the earthquake).

Dkt. 34, at 7.

Bergquist says that when water escaped from the pipe and flowed onto his property, it became an additional cause of damage to his property, bringing that damage within the scope of the ensuing loss provision in the Equipment Breakdown endorsement. The fatal flaw in Bergquist's argument is that he has not identified any part of the Equipment Breakdown endorsement, or any other provision of the policy, that would extend coverage to the water damage to his property. If the rupture of the water pipe resulted in damage to his property that was otherwise covered and not excluded under his policy, he would have a good argument that the exclusions for "wear and tear" and "rust or other corrosion, decay, deterioration" would not

bar coverage. But there is no initial grant of coverage for damage that originates in a ruptured water pipe, and the exclusions in the second half of section 3.b. expressly exclude damage resulting from rust, corrosion, or decay, which was the original cause of the water pipe's rupture. Bergquist has failed to identify any other covered cause. The court concludes that the Equipment Breakdown endorsement does not provide coverage for the damage to Bergquist's property.

In its summary judgment opposition brief, Auto-Owners requested summary judgment in its favor. Dkt. 34, at 9. It appears that Auto-Owners is entitled to summary judgment that the Equipment Breakdown endorsement does not cover Bergquist's loss. And because Bergquist relied exclusively on that endorsement in his motion for summary judgment, it raises the question of whether Auto-Owners is entitled to summary judgment that the policy does not cover Bergquist's loss at all. Federal Rule of Civil Procedure 56(f)(1) allows the court to grant summary judgment to a nonmovant after providing "notice and a reasonable time to respond." If Bergquist believes that Auto-Owners is not entitled to summary judgment, he must show how another provision of his policy provides coverage. Auto-Owners will have the opportunity to respond.

ORDER

IT IS ORDERED that:

1. Plaintiff Donn Bergquist's motion for partial summary judgment and motion to compel appraisal, Dkt. 11 and Dkt. 13, are DENIED.

2. Bergquist is ordered to show whether he is entitled to coverage under any other provisions of his insurance policy by February 3, 2020. Defendant Auto-Owners Insurance Company must file its brief in response no later than 14 days after Bergquist files his brief.

Entered January 13, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge