IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DONN BERGQUIST,

                      Plaintiff,

v.                                                                                OPINION and ORDER

AUTO-OWNERS INSURANCE COMPANY,

                                                                                     19-cv-104-jdp

                    Defendant and
                    Third-Party Plaintiff,

v.

SUPERIOR WATER LIGHT
AND POWER COMPANY,

                    Third-Party Defendant.

---

Plaintiff Donn Bergquist sought coverage from defendant Auto-Owners Insurance Company for damage to a commercial building caused by the rupture of an underground water pipe. Bergquist moved for partial summary judgment, contending that the policy covered the damage under an endorsement for "Equipment Breakdown." The court denied Bergquist's motion and directed him to show cause why summary judgment should not be granted to Auto-Owners. Dkt. 52.

In his response, Bergquist points to four provisions that he contends afford coverage for the damage to the building. Dkt. 53. Auto-Owners disagrees. Dkt. 56. The court concludes that none of the provisions afford coverage, so the court will grant summary judgment to Auto-Owners and close this case.

ANALYSIS

The undisputed facts and the applicable legal principles are stated in the prior order. Dkt. 52. The essential facts are simple: Auto-Owners insured a commercial property owned by Bergquist that sustained extensive water damage in 2018. Bergquist filed a claim with Auto-Owners, who hired an engineer to investigate the claim. The engineer determined that the damage was caused by a degraded underground water pipe. Dkt. 19-2.

With his response to the court's order, Bergquist submits his own declaration stating that the water that damaged his property was dirty-brown and smelled of petroleum. Dkt. 54. The court will consider Bergquist's declaration to be part of the summary judgment record.

**A. Pollutant coverage under the Causes of Loss—Special Form**

Bergquist contends that he is entitled to coverage under the Causes of Loss—Special Form. Dkt. 22-3, at 81–89. The parties assume that this form provides coverage for all direct physical loss to property, unless specifically excluded in Section B of the Special Form. So the question is whether Bergquist's loss is excluded under Section B.

When it originally denied coverage, Auto-Owners relied on the exclusion for water damage in Section B.1.g. of the Special Form. *Id*. at 82; Dkt. 30-1, at 1–2 (denial letter). That provision, in relevant part, excludes damage caused by:

> (4) Water under the ground surface pressing on, or flowing or seeping through:
>
> > (a) Foundations, walls, floors or paved surfaces;
> >
> > (b) Basements, whether paved or not; or
> >
> > (c) Doors, windows or other openings.

> (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.
>
> This exclusion applies regardless of whether any of the above, in Paragraphs g.(1) through (5) is caused by an act of nature or is otherwise caused.

Dkt. 22-3, at 82. Subsection (4) would seem to apply to Bergquist's loss, which was caused by water flowing or seeping into his building. And subsection (5) would seem to apply even to damage caused by any petroleum that was carried into Bergquist's property by the water from the ruptured pipe. But neither party has addressed the water damage exclusion, so the court won't rely on it either.

Bergquist relies instead on an exception to the pollution exclusion in section B.2.L. That subsection excludes damage resulting from:

> Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". However, if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".
>
> This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

Id. at 84. The court will assume that waterborne petroleum would constitute a "pollutant" under the policy. See id. at 71 (definition of "pollutant").

Bergquist relies on the exception within the pollution exclusion. That exception applies to pollutant discharge that "is itself caused by any of the 'specified causes of loss.'" Specified causes of loss are defined in Section G.2. Id. at 88. Bergquist argues that the discharge was caused by either "explosion" or "leakage from fire-extinguishing equipment," both of which are specified causes of loss.

3

Bergquist cannot connect the discharge to a specified cause of loss. The corroded water pipe did not explode; it leaked. Even if the leak started abruptly, there is no evidence that there was any explosion. The water pipe leaked near a fire hydrant, but the pipe itself was not fire-extinguishing equipment. As Auto-Owners points out, if any pipe connected to a hydrant or a sprinkler were deemed to be fire-extinguishing equipment, then virtually all water pipes would be fire-extinguishing equipment, and the exclusion would be meaningless. Policy language is to be construed from the perspective of a reasonable insured, *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 47, 275 Wis. 2d 35, 59, 683 N.W.2d 75, 87, but Bergquist's expansive interpretation is not reasonable.

**B. Pollutant extraction coverage**

Bergquist contends that he is entitled to coverage under the Building and Personal Coverage Form. Dkt. 22-3, at 58–71. Bergquist relies on section A.4.d., which provides coverage for Pollutant Clean-Up and Removal. Bergquist's argument on this point has two fatal flaws.

First, pollution clean-up is covered only if the pollutant discharge is the result of a "Covered Cause of Loss." For the definition of Covered Cause of Loss, we turn again to the Causes of Loss—Special Form. And for reasons explained above, Bergquist cannot show that the discharge of pollutants was the result of a covered cause.

Second, Bergquist has no evidence that he suffered any damage as a result of the discharge of pollutants. He suffered water damage, as shown by the report he has submitted. Dkt. 19-2. That report, by an engineering firm hired to evaluate the damage, explains in detail how the water leak damaged the building. It does not refer to any pollutant damage or any

need for pollutant removal. So, even if the water that damaged Bergquist's property was dirty and oily, he suffered only water damage and has no need for pollutant remediation.

## C. Equipment Breakdown endorsement

Bergquist contends that the Equipment Breakdown endorsement, Dkt. 22-3, at 50–56, affords coverage. The court has already determined that even though this endorsement covers damage in pressure piping (in section 3.b(1)(a)), it does not cover the damage to Bergquist's property because the same section expressly excludes damage in water piping. Dkt. 52.

Bergquist now argues that the provision relating to mechanical equipment in section 3.b(1)(b) applies. That provision extends Equipment Breakdown coverage to "[a]ll mechanical, electrical, electronic or fiber optic equipment." The water leak was caused by "two holes in the lead near the shut-off valve" for a fire hydrant. Dkt. 55-1, at 1. Bergquist says that the failed pipe is mechanical equipment under section 3.b(1)(b), or at least a jury could so find. The idea that the pipe constitutes mechanical equipment is a stretch, but Bergquist's argument fails even if the pipe were mechanical equipment.

The next part of section 3 defines "Equipment Breakdown" to exclude failures attributable to several causes:

> However, "Equipment Breakdown" does not mean:
>
> Physical loss or damage caused by or resulting from any of the following; however, if loss or damage not otherwise excluded results, then we will pay for such resulting damage:
>
> . . .
>
> > (b) Rust or other corrosion, decay, deterioration, hidden or latent defect, 'fungi', wet rot, dry rot, virus, bacteria or any other quality in property that causes it to damage or destroy itself . . . .

5

Dkt 22-3, at 55. So even if the pipe and valve were "mechanical equipment," the damage is not covered if the leak was attributable to "corrosion, decay, deterioration, hidden or latent defect." The evidence at summary judgment shows that there is no other reasonable explanation for the leak. *See* Dkt. 35-1 (correspondence from the local utility, Superior Water, Light & Power Company, explaining the cause of the leak). So, by definition, the leak does not constitute "equipment failure."

**D. Ordinance or Law Coverage endorsement**

Bergstrom's policy includes an endorsement for Ordinance or Law Coverage. Dkt. 22-3, at 90–92. This endorsement provides coverage for certain expenses or losses incurred as a result of the enforcement of ordinances or laws against a damaged building. Bergquist contends that "[t]he finder of fact may conclude that ordinance and law in place from various municipalities and the State of Wisconsin enhance[] recovery in this action." Dkt. 53, at 5.

Bergquist's two-sentence argument is so underdeveloped that the court deems it waived. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments are waived."). The endorsement applies only if a building has suffered an otherwise covered loss, which Bergquist has failed to show. And Bergquist does not identify any ordinance or law that requires him to repair or demolish his property.

CONCLUSION

In response to the court's order, Bergquist has failed to identify any provision of his insurance policy that affords coverage for the damage to his property. The court will grant summary judgment to Auto-Owners and dismiss this case.

ORDER

IT IS ORDERED that summary judgment is granted in favor of defendant Auto-Owners Insurance Company. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered June 3, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge